## Case No. 346.

### The ANASTASIA.

### [1 Ben. 166.][1]

District Court, E. D. New York. May, 1867.

SALVAGE—SUPERSEDING MASTER—TAMPERING WITH EVIDENCE—COSTS.

1. Where the libellant went on board the brig at Bermuda to come in her to New York, and alleged that the master proved incompetent, and after being out twenty-three days, the provisions and water falling short, he took charge of the vessel and brought her into a port of Nova Scotia, contrary to the wishes of her master, and thereby saved her to her owners, *Held*, That the facts alleged by the libellant as to the condition of the vessel were not sustained by the proof.

2. That whether the libellant did supersede the master or not, the facts of the case were not such as to warrant the court in giving him compensation for such action. No such extraordinary remedy was necessary under the circumstances shown. That the libellant's claim, therefore, must be dismissed.

3. Where the log of the vessel, as produced in court, had plainly been tampered with by the master or mate, or both—the master being part owner, and the mate his brother, *Held*, that such a circumstance might well justify a court in rejecting, without ceremony, not only the log, but also the evidence of the persons who attempted to impose it upon the court.

4. That the court would mark its disapproval of such misconduct by condemning the vessel to pay the costs of the action.

In admiralty. This was an action to recover salvage. The libel was filed by Walter

[1][Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Burke in behalf of himself and all others, and it averred that in December last the libellant, Burke, being in Bermuda, and desirous of coming to New York, was offered a passage, free of expense, in the Italian brig "Anastasia," and he accordingly came on board for that purpose, and that there came on board at the same port a crew of six consul's men also bound to New York; that in the prosecution of the voyage the vessel met with adverse winds and cold weather, which the Italian master and crew proved incompetent to contend with successfully; that the vessel was frequently and unnecessarily put back, and so kept knocking about for some twenty-three days without making any port, when the whole voyage need not have occupied more than ten or fifteen days at the farthest; that on the twenty-third day of the voyage, when the provisions and water were already getting short, and when the vessel was within about thirty miles from the port of Liverpool, Nova Scotia, the wind then blowing from the northwest and the brig being badly iced, the master announced his intent to put back again and run for Bermuda; that such course, if adopted, would have placed the vessel in great danger of loss through the starvation of all on board; whereupon, the libellant, Burke, in order to preserve the vessel, took charge of the same, and with the aid of the consul's men knocked off the ice and headed her for Liverpool, contrary to the wishes of the master; that she arrived off Liverpool the same night at dark, and stood off and on till morning, when she went into the harbor in safety; and but for the services so rendered by him, the libellant alleged that the vessel would, as he believed, have been totally lost, and that such services were extraordinary and entitled him to a salvage compensation. These allegations the claimants for the most part denied, and they insisted that the vessel was in no danger; that her master and crew were competent to her navigation; that the libellant rendered no service; and that the vessel went into Liverpool in accordance with the wishes of her master, in order that they might get rid of the libellant and the consul's men, who, as it is claimed, seemed desirous of causing disturbance on the vessel.

Benedict, Tracy & Benedict, for libellant.
Beebe, Dean & Donohue and T. Scudder, for claimants.

BENEDICT, District Judge. This case has been treated on both sides as if the crew of consul's men were to be considered libellants as well as Burke, although the libel sets forth that no special services were rendered by the crew—makes no claim for compensation to them, and prays no decree in their favor. I shall therefore consider the case as it has been treated by the advocates, and shall in the first instance dispose of the claim of the seamen by saying that the proof

that they were paid in Liverpool for their services on board, a sum which they received in full of all their demands, is clear. They were intelligent men, and knew what they were about when they accepted this payment as in full, and I must hold any claim they may have had, to have been satisfied by this payment.

There remains the demand of Burke. The position of this person on board the brig, as described by himself, is somewhat anomalous, and I do not consider it clear that he can be considered to have been a passenger within the meaning of the maritime law as applied to passengers in cases of salvage.

In the case of The Hanna, 15 Law T. (N. S.) 334, it was held by Dr. Lushington that a person very similarly situated was not a passenger nor a seaman, but a nondescript. This question, however, is immaterial in this case, as I am of the opinion that it is not in any respect a case where a salvage can be awarded to him. It will be observed that the libellant does not claim to have performed any considerable labor or incurred any personal risk or displayed any extraordinary ability, but his demand is based upon the fact, as he claims it to have been, that he assumed the extraordinary responsibility of overruling the actual master of the vessel and of putting himself at the head of the consul's men and carrying the vessel into Liverpool without the direction and contrary to the wishes of her master. That the libellant did this is stoutly denied by the Italian master and crew; but if he did, I cannot, under the facts of this case, endorse his action to such an extent as to award him a salvage compensation therefor.

This vessel had suffered no injury from stress of weather. The allegation that she was short of provisions or water is not sustained by the proofs. Her master and crew were in good health, sufficient in number for the ordinary crew of such a vessel; and, although their method of navigation would doubtless be far from satisfactory to most American seamen, they were competent, after their fashion and in their own time, to complete their voyage. It is, therefore, not a case where the extraordinary remedy which the libellant claims to have resorted to was necessary for the salvation of the vessel. It must be a strong case, clearly proved, which would justify a court in commending, by a salvage award, the assumption of such authority and such a responsibility.

The interests of commerce, which are the foundation of the whole doctrine of salvage, require that the master of a ship, who has been intrusted by the owners to take charge of their property, and who is responsible to them for its safe return, shall continue in command, as long as there is any vessel left to be commanded. He may call salvors to his aid, but he is to be superseded while at sea only as a last resort in a case of desperate necessity. I do not say that the case

may not arise where it might be the duty of a passenger, seaman, or any other competent person present, to overrule the master and change the destination of a vessel against his wishes, nor do I say that the due assumption of such a responsibility would not be good ground for awarding a salvage compensation. But I apprehend that a case far stronger than the present one must be made out to justify such an award, whether to a person who did or did not owe duty to the ship.

I shall therefore reject the libellant's claim to recover a salvage award, but in so doing cannot allow to pass unnoticed a feature in the defence which I regret much to have seen. I allude to the condition of the brig's log book as produced in court by the claimant. It is clearly to be seen that this log has been tampered with by the master (who is part owner of the brig) or the mate (who is his brother), or both—parts erased—parts written in since the occurrence of the transactions purporting to be related. Such a circumstance might well justify a court in rejecting without ceremony, not only the log itself, but also the evidence of the persons who attempt to impose it upon the court, and in a different case from the present might have ensured defeat to the claimants.

In the absence of any other way of marking my disapproval of such misconduct, I shall render in this case a decree similar to one rendered by Dr. Lushington for a different reason in the salvage case of The Rosalind, 2 Mar. Law Cas. 220, and while I award no sum to the libellant as salvage, shall condemn the vessel to pay the costs of this action.